1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HEIDI C. WOODSUM,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 3:11-cv-05549-RBL-KLS

REPORT AND RECOMMENDATION

Noted for April 12, 2012

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be affirmed.

FACTUAL AND PROCEDURAL HISTORY

        On February 22, 2006, plaintiff filed applications for disability insurance and SSI

benefits, alleging disability as of July 3, 2002, due to a recurrent and severe major depressive

REPORT AND RECOMMENDATION - 1

disorder, a post traumatic stress disorder ("PTSD") and an anxiety disorder. See Administrative Record ("AR") 98, 112, 141, 400. Her applications were denied initially and on reconsideration. See AR 63, 66, 71, 73, 400. A hearing was held before an administrative law judge ("ALJ") on October 22, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert. See AR 31-58.

On January 16, 2009, the ALJ issued a decision in which plaintiff was found to be not disabled. See AR 401-411. Plaintiff's request for review was denied by the Appeals Council on May 9, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 1; 20 C.F.R. § 404.981, § 416.1481. On June 22, 2009, plaintiff filed a complaint in this Court seeking review of defendant's decision. See AR 415. On May 7, 2010, this Court remanded this matter for further administrative proceedings. See AR 413-52. On June 3, 2010, the Appeals Council vacated the ALJ's decision and remanded this matter for further administrative proceedings pursuant to this Court's remand order. See AR 453, 455.

On May 6, 2011, a second hearing was held before the same ALJ, at which plaintiff, represented by counsel, appeared and testified, as did a different medical expert, and a vocational expert. See AR 359-97. On May 19, 2011, the ALJ issued a second decision in which he once more found plaintiff to be not disabled. See AR 333-53. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984, § 416.1484. The ALJ's decision therefore became defendant's final decision after sixty days. Id.

On July 19, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's second decision. See ECF #1-#3. The administrative record was filed with the Court on October 4, 2011. See ECF #12. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

REPORT AND RECOMMENDATION - 2

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in evaluating both the medical and lay witness evidence in the record; (2) in assessing plaintiff's residual functional capacity; and (3) in finding her to be capable of performing other work existing in significant numbers in the national economy. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.      <u>Dr. Wingate, Dr. Trowbridge and Dr. McRae</u>

The record contains medical opinions from various medical sources, as well as medical expert testimony provided at the second hearing, in regard to which the ALJ found in relevant part as follows:

> The record contains several evaluations performed at the request of the [Washington State] Department of Social and Health Services [("DSHS")]. In June 2005 Terilee Wingate, PhD, diagnosed post traumatic stress disorder, major depressive disorder, and alcohol dependence in full remission. The claimant reported that she had a DUI in March 2005 and was now on monitored Antabuse supervision. In November 2005 Dr. Wingate provided the same diagnoses and noted that the claimant had been sober for eight months (3F).
>
> Brett Trowbridge, PhD, evaluated the claimant in December 2006 at the request of DSHS. Dr. Trowbridge diagnosed major depressive disorder, post traumatic stress disorder, and alcohol dependence in remission one year. Dr. Trowbridge noted that the claimant was currently on psychiatric medications "prescribed at SeaMar by Dr. Elam" (10F).
>
> Dr. Wingate evaluated the claimant at the request of DSHS in November 2008. The claimant . . . reported being very active in [Alcoholics Anonymous]. She had a sponsor who visited her and took her to meetings twice a month. However, the claimant also reported being a recluse and staying in her room most of the time. On mental status examination she had a dysphoric mood and blunted affect. She had a score of 54 on the Beck Depression Inventory. Dr. Wingate diagnosed post traumatic stress disorder,

major depressive disorder, and alcohol dependence in sustained remission, with a Global Assessment of Functioning [("GAF")] score of 40[1] (13F).

Medical expert Dr. Jay Toews testified at the claimant's [second] hearing that the claimant's primary impairment was alcohol dependence in full remission, and the records could indicate adjustment disorder with anxiety and depressed mood as provisional or probable.

. . .

. . . Dr. Towes reviewed all of the medical evidence of record . . . . In essence, he reviewed the same record I ruled upon in my prior hearing decision.

Dr. Toews referenced the exhibits of record . . . that had the 2004 diagnoses of: alcohol dependence with physiological dependence; cocaine abuse; cannabis dependence with physiological dependence; nicotine dependence with physiological dependence; posttraumatic stress disorder by self-report[;] depressive disorder NOS by self-report; and anxiety disorder by self-reports. Dr. Toews stated the psychiatric diagnoses were self-reported, except for the clinical diagnoses of substance abuse, so substance abuse figured prominently, and the assessed GAF [score of] 45 [provided by Widian Nicola, CDPT, in mid-October 2004, as part of an initial chemical dependency treatment assessment (see AR 183, 336-37, 371-72)] was predicated on the addictions. Dr. Toews noted that in April of 2005, the claimant tested positive for cocaine while suffering from alcohol withdrawal. Dr. Toews considered [the late June 2005, and late November 2005 opinions of Dr. Wingate (see AR 215-18, 231-35)], noting that while the Beck depressive and anxiety scores [of 54, 51 and 57 recorded by Dr. Wingate in her late November 2008, early December 2009, and early November 2010 opinions respectively (see AR 322, 556, 566)] were high, scores over forty tend to significantly overstate depression and anxiety. The finding was not further indicated by the normal mental status exam, with normal memory and trail-making tests.

Dr. Toews addressed the other medical opinions of record that the claimant was repeatedly assessed with PTSD and depression, although it was reported throughout she had normal mental status examinations. He noted a Beck depression score of 54, which is a problematic score in terms of reliability, and further that the claimant's mental status examination was normal and she

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) ("DSM-IV") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.")

REPORT AND RECOMMENDATION - 6

had good trail making scores. Dr. Toews testified the score was problematic because it indicates over reporting, the tool is totally self-reported, and a weak diagnostic tool for depression. Dr. Toews stated the DSHS evaluations were superficial clinical evaluations with not much objective support, all the same diagnoses of PTSD, major depressive disorder, alcohol abuse in remission, and with excellent mental status examinations. There was no anxiety indicated in the mental status examinations.

It was Dr. Toews [sic] opinion [that] the claimant's primary impairment was alcohol dependence in full remission, and cocaine dependence in probable remission. Dr. Toews stated it was difficult to give credence to any other diagnosis other than [substance addiction] in remission, such as major depression or anxiety disorder given the record. The conditions under which she is seeing a therapist do not indicate *credible* therapy, maintaining phone contact [with her therapist] does not indicate [a] severe impairment because her alleged problems are readily treatable with cognitive behavioral therapy [sic] any appropriate medication. Dr. Toews further stated the record could gratuitously indicate the possibility of an adjustment disorder with anxiety and depressed mood as provisional or probable, but the examinations do not support major depression or anxiety.

It was Dr. Toews opinion the claimant had no more than mild limitations in activities of daily living, moderate limitations in social functioning, mild limitations in concentration[,] persistence and pace, with no evidence of decompensation. Dr. Toews reported the claimant may benefit from a predictable routine with no social contact. It was further his opinion that other than the claimant's statements that psychiatric factors are very interfering there is little objective evidence in support. He stated the claimant's reports of being reclusive could be related to depression, but could also be related to her motivation, self-serving behavior, and secondary gain.

. . .

I give little weight to the opinions of [Brett E.] Trowbridge[, Ph.D.], [and] Dr. Wingate . . . (3F, 10F, 13F, 14F, 15F). While there is objective evidence that the claimant has a mental health condition and some resulting limitation, I find that the evaluations were completed largely based on the claimant's self-reported symptoms and complaints, and contain few objective findings in support of the degree of limitation opined. Dr. Trowbridge and Dr. Wingate assessed moderate to severe limitations in various cognitive and social factors. These assessments of functioning are inconsistent with their mental status examination findings that are largely normal. In addition, Dr. Wingate appears to be providing accommodation opinions. For example, on November 30, 2005, she assessed marked limitations in the claimant's ability to interact appropriately in public contacts and in her ability to control her movements and maintain appropriate behavior, and severe limitations in the ability to

respond appropriately to and tolerate the pressures and expectations of a normal work setting (3F). That assessment is controverted by Sea Mar [Community Health] treatment notes, which describe the claimant on November 11, 2005 as having an animated, interactive and spontaneous affect. The treatment note of December 14, 2005 states that the claimant had excellent resolution of depressive symptoms on Effexor. Dr. Wingate's assessments are further contradicted by evidence that the claimant was working in January 2006. Her only work-related complaints at that time, as noted in the Sea Mar records, were fatigue because her significant other had a television in their bedroom, and some elbow pain (4F).

. . .

In December 2006 Dr. Trowbridge assessed marked limitations in several social factors. However, he relied on the claimant's Beck Depression Inventory, which is based solely on her self-report, and on her complaints of anxiety around people (10F). The claimant did not fully disclose her relationships or work history to Dr. Trowbridge, such as her work activity in 2006. Again, to the extent Dr. Trowbridge relied on her self-reported symptoms, his opinion is discounted.

Dr. Wingate assessed a GAF [score] of 40 in 2008, and although she did not score perfectly on her mental status exam, she did have good eye contact, she was cooperative, oriented, immediate recall was intact, she could perform serial threes, and she had knowledge of current events (13F). In 2009, Dr. Wingate again assessed a GAF [score] of 40 and noted a Beck Depression Inventory score of 51. (14F). In 2010, Dr. Wingate again found marked limitations in functioning, and GAF scores in the forties. (15F). I again note that these evaluations were conducted for the purpose of determining the claimant's eligibility for state assistance; the claimant was likely aware that the continuation of state assistance was dependent upon the DSHS evaluations, and therefore there was incentive to overstate symptoms and complaints. As Dr. Toews noted, these examinations are not notably trustworthy. For all the above stated reasons, these opinions are accorded little weight.

AR 337-38, 344-45, 347-49 (internal footnotes omitted). Plaintiff argues the ALJ erred here in rejecting the opinions of Dr. Wingate and Dr. Trowbridge, and in relying on the testimony of Dr. Toews to do so. Although the undersigned agrees the ALJ erred in relying on the testimony of Dr. Toews – except, as explained in greater detail below, with respect to the fact that the Beck Depression Inventory is subjective, that is it is based on the tested individual's own self-reports –

REPORT AND RECOMMENDATION - 8

the ALJ did not err in rejecting the opinions of Drs. Wingate and Trowbridge.

The undersigned does agree it was improper for the ALJ to discount the opinions of Drs. Wingate and Trowbridge on the basis that they were "accommodation opinions," that they "were conducted for the purpose of determining [plaintiff's] eligibility for state assistance" and that she "was likely aware that the continuation of state assistance was dependent upon the DSHS evaluations, and therefore there was incentive to overstate symptoms and complaints." AR 347-48. Absent "evidence of actual improprieties," the purpose for which a medical report is obtained is not a legitimate basis for rejecting it. Lester, 81 F.3d at 832 ("An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner."). Further, although the opinions of Dr. Wingate and Dr. Trowbridge may have been favorable to plaintiff in that they noted significant limitations in her mental functioning, there is no indication either psychologist actually improperly advocated on her behalf. See AR 215-18, 231-35, 300-03, 320-25, 550-59, 564-70.

The ALJ further erred, as indicated above, in placing greater weight on the testimony of Dr. Toews in regard to the validity or lack thereof of the Beck Depression Inventory and the like, as it does not appear he based his testimony on anything other than his own expertise, and there is nothing in the record to suggest he was more qualified to evaluate the legitimacy of the scores obtained than Dr. Wingate and Dr. Trowbridge, who actually administered the tests, and who both appear to be licensed or certified psychologists. See Lester, 81 F.3d at 830-31 (opinion of examining physician entitled to greater weight than that of non-examining physician, and non-examining physician's opinion may constitute substantial evidence only if "it is consistent with other independent evidence in the record"); Tonapetyan, 242 F.3d at 1149.

That being said, plaintiff does not challenge the ALJ's statement – nor is there any

indication in the record to the contrary – that the Beck Depression Inventory is subjective in nature, and thus is based solely on the tested individual's own reporting. See AR 344, 348, 373-74. As noted above, the ALJ rejected the opinions of Dr. Wingate and Dr. Trowbridge in part because they were based largely on plaintiff's self-reported symptoms and subjective complaints. Plaintiff argues the ALJ erred in doing so. Specifically, she asserts psychiatric diagnoses are necessarily based for the most part on the individual's own reported symptoms, pointing out at least one court has observed that "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, *unless there are other reasons to question the diagnostic techniques*." ECF #19, p. 13 (quoting Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (emphasis added); see also Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000).

It certainly may be that psychiatric diagnoses are necessarily based to some significant extent on what is reported by the individual concerning his or her symptoms and limitations. See Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997) ("[a] patient's report of complaints, or history, is an essential diagnostic tool"; "[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints"). However, this does not mean it is inappropriate to reject a psychiatric diagnosis when there are valid reasons to discount the credibility of the reporting on which it is based. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); see also Morgan, 169 F.3d at 601.[2]

---

[2] It is true, as noted by plaintiff, that in Ryan v. Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), the Ninth Circuit stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." Id. at 1199-1200. The Ninth Circuit, however, went on to note that there was "nothing in the record to suggest" the examining physician in that case relied on the claimant's own "description of her symptoms . . . more heavily than

In reversing the ALJ's prior decision, the Court upheld the ALJ's finding that plaintiff was not fully credible regarding her reported symptoms and subjective complaints. See AR 413, 441-44. The undersigned finds no reason to overturn that finding, nor has plaintiff challenged – or again does the undersigned find improper – the reasons for discounting her credibility the ALJ provided in his most recent decision. See AR 342. In addition, the functional limitations Dr. Wingate and Dr. Trowbridge assessed are clearly largely based on plaintiff's self-reporting, as well as on the Beck Depression Inventory scores, which as discussed above, also were based on plaintiff's own reports and subjective complaints. See AR 215-18, 231-35, 300-03, 320-25, 550-59, 564-70. Accordingly, the ALJ did not err here.

Also as noted above, the ALJ rejected the opinions of Drs. Wingate and Trowbridge on the basis that the "assessments of functioning [contained therein] are inconsistent with their mental status examination findings that are largely normal." See AR 347; see also 215-18, 300-03, 320-25, 550-59, 564-70. Discrepancies between a medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding a claimants capabilities "is a clear and convincing reason for not relying" on the assessment. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989); see also Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if it is inadequately supported by clinical findings). The ALJ, therefore, provided at least two valid reasons for rejecting the opinions and functional assessments of the above two examining psychologists.

Lastly, plaintiff argues that based on the testimony of Dr. Toews, the ALJ should have ordered an additional psychological evaluation, including further psychological testing that was

his own clinical observations." Id. at 1200. As discussed herein, such is not the case in this matter.

more objective.  An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." <u>Tonapetyan</u>, 242 F.3d at 1150 (citations omitted).  But it is only where the record contains "[a]mbiguous evidence" or where the ALJ finds "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered.  <u>Id.</u> (citations omitted); <u>see</u> <u>also</u> <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001).  The record, however, is neither ambiguous nor is it inadequate to allow for a proper evaluation of the evidence contained therein.  As such, the ALJ was not required to further develop the record here, and did not err in declining to do so.

B.    <u>Dr. Comrie</u>

Plaintiff also challenges the ALJ's following findings:

The State agency psychological consultant Matthew Comrie, Psy.D., commented [in early April 2006,] that the claimant was functioning better after she became clean and sober.  The consultant found that the claimant retained the ability to carry out simple and *detailed* instructions, should not work intensively with the public, and could adapt to a predictable work routine with few social demands.  The consultant's mental residual functional capacity assessment is consistent with the evidence of record available to him at the time, and largely with Dr. [Tracy] Gordy's [medical expert] testimony [at the first hearing].  The State agency assessment is accorded significant evidentiary weight and is reflected in [the ALJ's residual functional capacity assessment].  I further note and have considered the evidence of record since Dr. Comrie's assessment, and find that it is largely consistent with the evidence of record available to Dr. Comrie at the time of his evaluation.

AR 347 (emphasis in original).  Plaintiff argues the ALJ erred in so finding, in light of a letter written by Russ and Merilyn Parsons, for whom plaintiff did some work during the winter of 2006 (<u>see</u> AR 16), and the opinions of Dr. Wingate.  As discussed above, however, the ALJ did not err in rejecting the latter's opinions.  In addition, plaintiff has not specifically challenged the ALJ's stated reasons for rejecting the letter provided by the Parsons, nor does the undersigned

REPORT AND RECOMMENDATION - 12

find those reasons to be improper here.[3]  As such, the undersigned declines to reverse the ALJ's findings on this basis.

Plaintiff further argues the residual functional capacity ("RFC") with which the ALJ assessed her is not entirely consistent with Dr. Comrie's opinion.  Specifically, plaintiff asserts that while the ALJ found she could carry out simple and detailed instructions and tasks (see AR 339), Dr. Comrie opined that she "retain[ed] the ability to carry out" such instructions "most of the time" (AR 296).  But the record fails to show that the phrase "most of the time" used by Dr. Comrie in Section III of the mental residual functional capacity assessment ("MRFCA") form he completed (id.), constitutes a significant limitation, given that in Section I of that form, plaintiff was noted to be "[n]ot [s]ignificantly [l]imited" in her ability to understand, remember and carry out both "very short and simple" and "detailed" instructions.[4]  See AR 294.

C.    Dr. McRae

The record contains a "PHYSICIAN'S CERTIFICATION FOR MEDICAID" completed by John McRae, M.D., who diagnosed plaintiff with PTSD, a severe recurrent major depressive disorder and alcohol dependence in full remission, based in part on the late June 2005, and late November 2005 evaluation reports of Dr. Wingate.  See AR 214.  Dr. McRae also commented

---

[3] See AR 349 (rejecting statements of Russ and Merilyn Parsons regarding plaintiff's mental health status and symptoms in part because they were "inconsistent with her normal mental status examination around that time period"); see also Lewis v. Apfel, 236 F.3d at 511 (ALJ may discount lay witness testimony if it conflicts with medical evidence); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).

[4] It is true defendant's Program Operations Manual System ("POMS") states that **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of [the claimant's RFC]**." POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original).  Further, while the POMS "does not have the force of law," it has been recognized by the Ninth Circuit as being "persuasive authority." See Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).  Nevertheless, there is no indication anywhere in the MRFCA form Dr. Comrie completed – except for the boxes he checked in Section I that, as just noted, indicate no significant limitation in the areas of understanding, remembering and carrying out simple and detailed instructions – as to the actual meaning he attributed to the phrase "most of the time."  The undersigned thus finds the ALJ's interpretation of Dr. Comrie's narrative statement (i.e., that plaintiff could perform both simple and detailed instructions and tasks) was not improper.

that plaintiff did not "appear very stable mood-wise," and that "cognitively she [wa]s not nearly as limited as she [wa]s socially [and] stress tolerance-wise." Id. Further, Dr. McRae stated that plaintiff was "tense, sysphoric, [and] anxious," that "people [were] going to harm her" and that he "doubt[ed] she could maintain/persist in a work setting because of that." Id.

The ALJ rejected Dr. McRae's opinion because it was "insubstantial on its face," "couched in equivocal terms," "based on Dr. Wingate's [unsupported] examination," and "in essence a determination on the statutory definition of disability." AR 348. The undersigned agrees with the ALJ that Dr. McRae's opinion was insubstantial, in that while it did describe some of plaintiff's symptoms, no objective clinical findings were provided in support thereof. See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if it is inadequately supported by clinical findings). Plaintiff, furthermore, admits that Dr. McRae's opinion regarding her ability to work was equivocal, but argues Dr. McRae was not qualified to offer an opinion with respect thereto. Although, as noted by the ALJ, Dr. McRae could not offer an opinion as to whether or not plaintiff was in fact disabled as that issues is reserved solely to defendant (see 20 C.F.R. § 404.1527(e)), he is qualified to provide an opinion as to her ability to persist or maintain pace, as those are specific work-related functions.

D.    Ms. Nicola

Plaintiff next challenges the ALJ's following findings:

. . . The claimant . . . underwent an initial [chemical dependency treatment] assessment in 2004 performed by Widian Nicola, CDPT. (1F/3). Ms. Nicola assessed the claimant with: alcohol dependence with physiological dependence; cocaine abuse; cannabis dependence with physiological dependence; posttraumatic stress disorder by self-report; depressive disorder NOS by self-report; anxiety disorder by self-report; and a GAF [score] of 45. Ms. Nicola reported the claimant was a good historian, her mini mental exam was largely normal, she was oriented times three, and did not seem to have any cognitive barriers to treatment. I give weight to . . . Ms. Nocola's observations regarding [the] claimant's cognitive capacity but find that the

REPORT AND RECOMMENDATION - 14

> GAF score is of no moment in the longitudinal analysis of this case. [This source] did not express opinions on [the] claimant's capacity to work.

AR 345-46 (internal footnote omitted). Plaintiff argues the ALJ erred in accepting the "largely normal" mini mental status examination performed by Ms. Nicola, and her opinion that plaintiff "did not seem to have any cognitive barriers to treatment." AR 345. Specifically, plaintiff asserts Ms. Nicola was not a psychologist, and did not diagnose plaintiff's mental impairments herself or "perform a psychological assessment." ECF #19, p. 19.

It true that Ms. Nicola is not a psychologist or "acceptable medical source," and that this "may justify giving" her opinions less weight than an opinion from such a medical source. Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 *5; see also Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources"). However, evidence from "other sources," including other "medical sources" such as therapists, also may be used to "show the severity" of a claimant's impairments and the effect thereof on the claimant's ability to work. 20 C.F.R. § 404.1513(d), § 416.913(d). In addition, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-03p, 2006 WL 2329939 *5. Thus, the mere fact that Ms. Nicola is a therapist and not a licensed or certified psychologist, is not by itself a legitimate reason to discount her opinion.

It is also far from clear that the diagnoses Ms. Nicola provided are not her own. See AR 183. Even if they are not her own, the undersigned fails to see what relevance this has in regard to the credibility of her expressed opinion, without some evidence that her failure to provide her own independent diagnoses actually impact the credibility thereof. Lastly, although it may be

REPORT AND RECOMMENDATION - 15

that Ms. Nicola did not provide her own "psychological assessment" of plaintiff, this would not be entirely surprising, given that she is not a psychologist. As indicated above, furthermore, Ms. Nicola's opinions – which appear to be based to at least some extent on her own interactions with plaintiff – do constitute relevant evidence that the ALJ was required to consider, which for the reasons discussed herein, he did.[5]

        E.    Ms. Hoeman

        Finally, in terms of the medical evidence in the record, plaintiff finds fault with the following findings made by the ALJ:

> [Laura] Hoeman[, A.R.N.P.,] stated in November 2007 that the claimant had been very depressed lately and was not able to work (11F). Ms. Hoeman later assessed the claimant with a GAF [score] of 51[6] in October of 2008. (12F). Ms. Hoeman's opinions are unsupported by clinical findings or treatment records. Accordingly, I give them little evidentiary weight.

AR 347 (internal footnote omitted). This was a valid basis for rejecting Ms. Hoeman's opinions. See AR 316-18; Batson, 359 F.3d at 1195 (ALJ need not accept even treating physician opinion if it is inadequately supported by clinical findings). None of the statements plaintiff points to in Ms. Hoeman's opinions constitute objective clinical findings. Further, while those opinions may be consistent with the ones provided by Drs. Wingate and Trowbridge, as discussed above the ALJ did not err in evaluating the opinions of either psychologist or the other objective medical evidence in the record for that matter, including "the Sea Mar records" referenced by plaintiff.[7] ECF #19, p. 22. Accordingly, plaintiff's challenge here fails as well.

---

[5] To the extent plaintiff also is challenging the ALJ's findings in regard to Marge Haynes, CDP (see ECF #19, p. 19 n.8), for the same reasons the undersigned finds here too the ALJ did not err (see AR 184, 345-46).

[6] "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting DSM-IV at 34).

[7] Plaintiff fails to state which Sea Mar records Ms. Hoeman's opinions are inconsistent with, nor does she explain in what way or ways those records are not consistent with the latter's opinions. See Carmickle v. Commissioner of

REPORT AND RECOMMENDATION - 16

II.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

In addition to the letter from Russ and Merilyn Parsons discussed above, the record also contains lay witness statements from Greg P. Thompson (see AR 548), with respect to which the ALJ found in relevant part as follows:

> . . . Mr. Thompson stated that when he first met the claimant in November 2003 she was homeless, living in a tent and recently divorced. Mr. Thompson rented a room to her. He stated that since that time the claimant has become more reclusive. She is tearful most of the time. She does not finish anything she starts. . . .
>
> I give little weight to the statements of Mr. Thompson . . . , as [his] descriptions of the claimant as a tearful recluse are inconsistent with the documentary evidence. That evidence shows that the claimant has been active in AA, had normal mental status examination findings with a normal flat affect when seen at Sea Mar, and was working in 2006. The Sea Mar records repeatedly mentioned the claimant's significant other. The fact that the claimant was able to maintain such a relationship further detracts from the reliability of the lay witness statements.

AR 349. Plaintiff argues these are not germane reasons for rejecting the lay witness statements

Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

REPORT AND RECOMMENDATION - 17

from Mr. Thompson. The undersigned disagrees. A lay witness statement may be rejected, as it was by the ALJ here, if there is other evidence in the record regarding the claimant's activities that is inconsistent therewith. See Carmickle, 533 F.3d at 1164 (ALJ's rejection of lay witness evidence because it was inconsistent with claimant's successful completion of continuous full-time coursework constituted reason germane to claimant).

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Therefore, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent

with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity to perform work without any physical restrictions, but found she could only "**perform simple and detailed instructions and tasks**," and "**would do better with a predictable routine in social demands (i.e., work with no public interaction and that is non-collaborative in nature)**." AR 339 (emphasis in original). Plaintiff argues the ALJ erred by failing to take into account in assessing her RFC, the limitations noted by Dr. Wingate. But as discussed above, the ALJ did not err in rejecting Dr. Wingate's opinions and, as such, he did not have to adopt any limitations contained therein. Therefore, the ALJ did not err in assessing plaintiff's RFC on this basis.

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

1    (citations omitted).  The ALJ, however, may omit from that description those limitations he or

2    she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

3            At the second hearing, the ALJ posed a hypothetical question to the vocational expert

4    containing substantially the same limitations as were included in the ALJ's assessment of

5    plaintiff's residual functional capacity.  See AR 384-85.  In response thereto, the vocational

6    expert testified that an individual with those limitations – and with the same age, education and

7    work experience as plaintiff – would be able to perform other jobs.  See AR 385-86.  Based on

8    the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing

9    other jobs existing in significant numbers in the national economy.  See AR 351-52.

10           Plaintiff argues that when her "actual limitations" were presented to the vocational

11   expert, that expert testified that she could not perform any of the jobs identified. ECF #19, p. 23.

12   Again, however, because plaintiff has not shown the ALJ erred in his assessment of her residual

13   functional capacity, he had no duty to present any additional limitations to the vocational expert,

14   and thus did not err in failing to do so.  The undersigned agrees with plaintiff that it appears she

15   could not perform the job of landscape laborer, as the vocational expert testified it would "likely"

16   involve "some collaboration, people working together." AR 386.  While the vocational expert

17   did testify that such collaboration would occur "on a variable basis" (id.), this still is inconsistent

18   with the ALJ's limitation to work that is *non*-collaborative in nature.

19           On the other hand, the other three jobs identified by the vocational expert and adopted by

20   the ALJ as those plaintiff also could do – packager, small products assembler and electronics

21   worker (see AR 351-52, 385-86) – do not, contrary to plaintiff's assertion, require the ability to

22   collaborate as contemplated by the ALJ.  The vocational expert did testify that the small products

23   assembler job may be performed as part of an assembly line process that involves more than one

worker. <u>See</u> AR 385-92.  But he never actually testified that such a job would be performed *with* other workers (for example at the same time or in the same spot), nor did he ever use the term "collaboration" to describe the assembly line process of which that job could be a part. <u>See</u> <u>id.</u> Rather, it was plaintiff's counsel who attempted to describe that process as being collaborative in nature. <u>See</u> 386-92.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 12, 2012**, as noted in the caption.

DATED this 29th day of March, 2012.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21